UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


RONDAL M. CORNELL,

      Plaintiff,

vs().

                                      Civil Action 2:11-cv-00097
                                      Judge Edmund A. Sargus
                                      Magistrate Judge E.A. Preston Deavers

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff, Rondal M. Cornell, brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Plaintiff filed his application for disability insurance benefits in March 2006, alleging that he has been disabled since February 26, 2004 due to various mental and physical impairments. (R. at 61–67, 86.) The application was denied initially and again upon reconsideration. Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ").

On September 9, 2009, ALJ Robert S. Habermann held a hearing at which Plaintiff, represented by counsel, appeared and testified. A vocational expert also appeared and testified at the hearing. On October 17, 2008, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision on

December 20, 2010. Plaintiff timely commenced this action.

This matter is before the Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors, the Commissioner's Memorandum in Opposition, and Plaintiff's Reply. In his Statement of Errors, Plaintiff maintains that the ALJ failed to properly account for his mental limitations in assessing his residual functional capacity ("RFC"). For the reasons that follow, it is **RECOMMENDED** that the Court **REMAND** this case for further consideration consistent with this Report and Recommendation.

## II. PLAINTIFF'S TESTIMONY

Plaintiff was fifty-two years old at the time of the administrative hearing. (R. at 238.) He has past relevant work operating vehicles including a dump truck. (R. at 257.)

At the hearing Plaintiff chose February 26, 2004 as his disability onset date because on that day his legs gave out while he was working, causing him to fall off a trailer and break his left femur. (R. at 244–45.) Plaintiff stated that he experiences back pain everyday and that this pain runs down his back through his legs. (R. at 249–50.) He also testified to continuing problems with his legs with pain radiating into his feet. (R. at 251–52.) Plaintiff reported using a cane and also noted that sometimes his right leg will give out. (R. at 251, 256.) Plaintiff stated that he has some problems with his right arm and shoulder as well as arthritis in his hands. (R. at 252–53.)

During the hearing, Plaintiff testified regarding his mental limitations and impairments. Plaintiff stated that after completing the seventh grade he was transferred to vocational school. (R. at 239.) Ultimately, Plaintiff finished the tenth grade. (*Id.*) He reported having difficultly with reading and writing. (R. at 239–40.) Plaintiff explained that he suffers from depression.

(R. at 254.)  He stated that he good days and bad days, estimating that he averaged two good days a week.  (*Id.*)  On his good days Plaintiff is able to get up, walk around, and go out into his yard.  (*Id.*)  On his bad days Plaintiff testified to being unable to do anything and not wanting to talk to anyone.  (R. at 254–55.)

With regards to daily activities, Plaintiff stated that he has trouble sleeping and getting up in the mornings.  (R. at 240–41.)  Plaintiff reported needing some assistance in his daily grooming and noted that his wife prepares his meals.  (R. at 241–42.)  Plaintiff testified that after getting up he normally goes and sits on his porch and rides his four wheeler to go feed his animals.  (R. at 243.)  Plaintiff noted that he tries to go for walks and can walk to his mailbox and back, which is approximately one-hundred yards away.  (*Id.*)  He stated that he needs to rest about an hour and a half each day.  (R. at 244.)

Finally, during the hearing Plaintiff testified to his past relevant work.  (R. at 247–48.)  Plaintiff reported being a self-employed truck driver for approximately four years.  (R. at 247.)  He indicated that during this time he drove both semi and dump trucks.  (R. at 247–48.)  According to Plaintiff, he did not typically have to drive far from home when doing this work.  (R. at 248.)  Although Plaintiff was self employed, he did not complete his own business records.  (R. at 248.)

### III. MEDICAL RECORDS

On February 13, 2006, Dr. Balusamy Subbiah, Plaintiff's primary care physician, diagnosed Plaintiff with severe depression.[1]  (R. at 153, 171.)  At this time, Plaintiff was already

---

[1] The Court notes that the record contains medical evidence dating back to Plaintiff's femur fracture in February 2004.  Nevertheless, in his Statement of Errors, Plaintiff does not challenge the ALJ's decision with respect to his physical impairments.  Accordingly, the Court

3

on Wellbutrin for his depression. (*Id.*) Dr. Subbiah told him to continue on this medication. (*Id.*) Plaintiff, however, did not feel the medication was helping. (*Id.*)

Dr. Evelyn L. Kirkhart saw Plaintiff for two consulting appointments in September and October 2005, and completed a written evaluation detailing Plaintiff's impairments. (R. at 148–50.) Dr. Kirkhart found Plaintiff to be chronically-passive aggressive and opined that Plaintiff was either angry or depressed most of the time. (R. at 149.) She noted that Plaintiff was resistant to authority; tended to perceive that others were causing him problems; had a low frustration tolerance; had a short temper; did not like public places; and lacked social skills. (*Id.*) Dr. Kirkland concluded that Plaintiff was functionally illiterate, but had average intelligence. (*Id.*) She opined that Plaintiff's inability to read or write caused him to feel socially inferior. (*Id.*) Dr. Kirkland also noted that Plaintiff's recent accident had exacerbated his previous difficulties. (*Id.*) Plaintiff reported to Dr. Kirkland that he was a chronic alcohol user. (*Id.*) Dr. Kirkland opined that his alcohol use exacerbated his chronic pain and that he would need a period of sustained alcohol abuse rehabilitation before he would be able to tolerate stress. (R. at 150.) Ultimately, Dr. Kirkland diagnosed Plaintiff with psychological factors affecting medical condition and coping style; mood disorder due to substance induced mood (alcohol abuse); and bipolar disorder. (*Id.*)

On June 3, 2006, Psychologist Richard E. Sexton examined Plaintiff and completed a disability assessment. (R. at 160–65.) Plaintiff reported occasional alcohol use to Dr. Sexton, but denied that it was a problem. (R. at 160.) Dr. Sexton concluded from testing that Plaintiff was within the borderline range of overall intelligence. (R. at 162.) Plaintiff's testing further

---

will focus its review of the medical evidence on Plaintiff's mental impairments.

demonstrated that Plaintiff was at a fifth grade level in reading, a second grade level in spelling, and a fourth grade level in arithmetic. (R. at 163.) Dr. Sexton diagnosed Plaintiff with dysthymic disorder; somatoform disorder—not otherwise specified; and borderline intelligence. (R. at 164.) He assigned Plaintiff a current global assessment of functioning ("GAF") score of 55 to 59.[2] (R. at 164.)

Dr. Sexton opined that Plaintiff was capable of performing simple repetitive tasks and could understand, recall, and carry out simple instructions. (R. at 165.) Dr. Sexton indicated that as tasks became more complicated and challenging, Plaintiff's overall performance tended to be maintained at a comparable level, with Plaintiff being stronger at non-verbal tasks. (*Id.*) According to Dr. Sexton, Plaintiff's ability to interact with others was fair. (*Id.*) Dr. Sexton suggested that Plaintiff's ability to tolerate stress was also fair although this depended on Plaintiff's emotional and physical status. (*Id.*)

In July 2006, state agency physician Dr. Bruce Goldsmith completed a psychiatric review technique and mental RFC assessment of Plaintiff. (R. at 178–95.) Dr. Goldsmith diagnosed Plaintiff with dysthymic disorder and mood disorder due to substance abuse, but did not find that these conditions rose to the level of § 12.04 of the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. (R. at 185.) Dr. Goldsmith also diagnosed Plaintiff with borderline intellectual functioning, but found that it did not satisfy the requirements of mental retardation under the Listings. (R. at 186.) Finally, Dr. Goldsmith diagnosed Plaintiff with

---

[2] "A GAF score of fifty-one to sixty indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 665 n.2 (6th Cir. 2009).

somatoform disorder, not otherwise specified, which did not meet the Listing requirements. (R. at 189.) Dr. Goldsmith opined that Plaintiff's was mildly limited as to his activities of daily living; moderately restricted in maintaining social functioning; and moderately limited in maintaining concentration, persistence, or pace. (R. at 192.)

In assessing Plaintiff's functional capacity, Dr. Goldsmith found Plaintiff capable of understanding and remembering simple 1-2 step tasks, but opined that Plaintiff would have more difficulty with complex tasks. (R. at 180.) According to Dr. Goldsmith, Plaintiff's "concentration and attention are adequate for simple and routine tasks." (*Id.*) Dr. Goldsmith concluded that Plaintiff was moderately limited in a variety of areas relevant to understanding and memory; sustained concentration and persistence; social interaction; and adaptation. (R. at 178–79.) Dr. Goldsmith further concluded:

> [Plaintiff] does report difficulty getting along with the general public, so he would likely do better in a work environment with limited public interaction. He would be able to relate to coworkers and supervisors on a very superficial level. His ability to adapt to workplace stressors is somewhat reduced, especially given physical symptoms. He should be able to adapt to a low stress work environment, without strict quotas.

(*Id.*) State agency physician Dr. Karen Stailey-Steiger affirmed the decisions of Dr. Goldsmith. (R. at 207.)

Plaintiff saw Dr. Subbiah for follow up in October 2007 and reported anxiety problems. (R. at 217.) Dr. Subbiah noted that Plaintiff's anxiety "is always bad for him." (*Id.*) In February 2008, Dr. Subbiah again noted that anxiety was a major problem for Plaintiff. (R. at 218.) Finally, in May 2008, Dr. Subbiah noted that Plaintiff experienced frequent mood swings and opined that Plaintiff may have bipolar disorder. (R. at 220.) At this time, Dr. Subbiah prescribed Ativan to help with Plaintiff's anxiety. (R. at 221.)

## IV. EXPERT TESTIMONY

Olen Dodd testified as a vocational expert at the September 2008 hearing. Mr. Dodd testified that Plaintiff's past relevant work consisted of vehicle operation, including driving both semi and dump trucks. (R. at 257.) Mr. Dodd indicated that a dump-truck driver is unskilled work and a semi-truck driver is semiskilled work. (R. at 257.) Overall, Mr. Dodd characterized Plaintiff's work as "truck driver," which he classified as medium and semiskilled work. (*Id.*)

The ALJ then asked Mr. Dodd to consider three different hypothetical people. First, Mr. Dodd considered a person with Plaintiff's background who could read and write below a sixth grade level; perform medium level extertional activity; and had a mild reduction in concentration, persistence, and pace due to fatigue and depression. (R. at 259.) Mr. Dodd provided that such a person could perform Plaintiff's past work as a truck driver. (*Id.*) Second, the ALJ asked Mr. Dodd to consider an individual with the same characteristics as the first hypothetical individual, except that fatigue and depression now caused a moderate reduction in concentration. (*Id.*) Mr. Dodd concluded that such a person could still perform Plaintiff's truck-driving activities, but suggested that the person be limited to the unskilled dump-truck driving that Plaintiff performed. (R. at 259–60.) Finally, the ALJ proposed a third hypothetical person, who retained all of the same characteristics as the first individual, except that depression and fatigue caused this person to be severely restricted in concentration causing abandonment of task. (R. at 260.) Mr. Dodd stated that such a person would not be capable of any of Plaintiff's past work nor any other work. (*Id.*)

## V. ADMINISTRATIVE DECISION

The ALJ issued a decision on October 17, 2008. The ALJ determined that Plaintiff last met the insured status requirements for the purposes of disability benefits on September 30, 2007. (R. at 15.) At the first step of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity from the alleged onset date, February 26, 2004, through September 30, 2007. (R. at 16.)

Next, the ALJ found that Plaintiff had severe impairments including "degenerative arthritis; dysthymic disorder; mood disorder due to substance abuse; borderline intellectual functioning; somatoform disorder, not otherwise specified; and substance addiction disorder." (R. at 16.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the level of severity described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20–22.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ evaluated Plaintiff's RFC. The ALJ found Plaintiff physically capable of performing medium work with a number of physical restrictions. (R. at 22.) In terms of mental capacity, the ALJ concluded the following:

> [Plaintiff] has about a 10th grade education and can read and write at less than the 6th grade level; he has pain in [his] back, wrists, arms, fingers, and feet; takes some medication that causes drowsiness; has some depression and good days and bad days; doesn't sleep well and has fatigue from lack of sleeping; and any combination of these would cause moderate reduction in concentration, persistence and pace.

(*Id.*) In reaching this determination, the ALJ gave determinative weight to the medical opinions of opinions of Drs. Sexton and Goldsmith and appeared to credit all of the mental limitations these physicians assigned. (R. at 23–25.) The ALJ also gave some weight to the treatment records of Drs. Subbiah and Kirkhart.[4] (R. at 25.)

The ALJ concluded that the RFC he assigned did not preclude Plaintiff from his previous work as a dump-truck driver. (R. at 26.) The ALJ relied on the testimony of Mr. Dodd to reach this conclusion, noting that his second hypothetical question to Mr. Dodd closely matched Plaintiff's RFC. (*Id.*) Based on his conclusion that Plaintiff could perform past relevant work, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant period. (*Id.*)

---

[4] The ALJ also gave some weight to Dr. Edward Dachowski, who he believed to be a treating psychiatrist. (R. at 25.) Nevertheless, as Defendant notes, there is no medical evidence from Dr. Dachowski in the record. (*See* R. at 205.) Defendant suggests, and the record appears to indicate, that the ALJ considered some records pertaining to Plaintiff's son, who shares the same name. (R. at 45, 55–56.) Plaintiff, however, has not raised any contention of error as to this issue.

# VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the [Commissioner's] decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the Commissioner's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## VII. LEGAL ANALYSIS

Plaintiff maintains that the ALJ failed to adequately incorporate all of the relevant mental limitations into his RFC analysis. The undersigned agrees. Specifically, neither the ALJ's evaluation of Plaintiff's RFC or hypothetical questions to the vocational expert account for all of Plaintiff's mental limitations the ALJ accepted.[5] Furthermore, the undersigned concludes that the ALJ's errors were not harmless.

### A.   Residual Functional Capacity and Hypothetical Question

Residual functional capacity ("RFC") is an assessment of the most a claimant can still do despite his or her limitations. 20 CFR § 404.1545(a). A claimant's RFC is used to assess whether that claimant can perform past relevant work and whether the claimant can adjust to other work. 20 C.F.R. § 404.1520(a)(4). In assessing a claimant's RFC, the ALJ must consider "all relevant evidence and findings regarding an individual's work related limitations." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007); *see also Thompson v. Astrue*, No.

---

[5] As Defendant notes, Plaintiff did not explicitly raise any statement of error as to the ALJ's failure to incorporate all of Plaintiff's mental limitations into the hypothetical questions. Under the circumstances of this case, however, this issue is essentially the same as Plaintiff's challenge to the ALJ's RFC determination. As Plaintiff notes, the RFC is of crucial importance because it is used to determine whether Plaintiff can perform past relevant work or adjust to any other work. 20 C.F.R. § 404.1520(e). In this case, the ALJ used the RFC to determine whether Plaintiff could perform past relevant work by asking a hypothetical question to the vocational expert that mirrored the RFC. *Cf. Burt v. Astrue*, Civ. No. 1:09-CV-227, 2010 WL 3851733, at *12 (E.D. Tenn. July 6, 2010) ("The purpose of hypothetical questions is to find out if jobs are available in response to a question that matches the vocational characteristics of Plaintiff, including her RFC.") (Report & Recommendation later adopted). Finally, the ALJ relied on the vocational expert's answer to this hypothetical question to reach the ultimate decision that, given the assigned RFC, Plaintiff was not disabled. Given these circumstances, to the extent the hypothetical question and RFC failed to account for Plaintiff's mental impairments, neither serves as valid support for the ALJ's disability decision.

3:10–cv–01688, 2011 WL 3298904, at *12 (N.D. Ohio Aug. 2, 2011) ("Clearly, significant limitations in a claimant's mental work capabilities must be accurately accounted for if an RFC finding is to be supported by the record as a whole.").

An RFC includes an assessment of a claimant's mental abilities and limitations. 20 C.F.R. § 404.1545(c). Notably, limitation categories within the "paragraph B criteria" are not equivalent to a mental RFC assessment.[6] SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Instead, a mental RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B." *Id.* Examples of limitations that may reduce a claimant's ability to work include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting . . . ." 20 C.F.R. § 404.1545(c).

Relatedly, in complex cases, an ALJ may choose to rely on vocational expert testimony "given the [vocational expert's] ability to tailor [his or] her finding to an individual's particular residual functional capacity." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (internal quotations omitted). In such situations, the ALJ will ask the vocational expert hypothetical questions reflecting potential RFC determinations. For vocational expert testimony

---

[6] The Sixth Circuit has provided:

> There are four areas of functional loss which have been found especially relevant to the ability to work. They correspond to the paragraph B criteria of the various mental disorders listed in 20 § C.F.R. Pt. 404, Subpt. P, App. 1, and are known as the "B" criteria. The four areas are: activities of daily living; social functioning; concentration, persistence and pace; and deterioration or decompensation in work or work-like settings.

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1993).

to serve as substantial evidence in support of the ALJ's decision, however, a hypothetical question "must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). Consequently, various federal courts, including the Court of Appeals for the Sixth Circuit, have found hypothetical questions inappropriate when such inquiries do not fully account for a plaintiff's mental limitations. *See, e.g.*, *id.* (hypothetical question limiting a person to simple, repetitive tasks, in a non-public setting, did not account for psychological consultant's conclusion that limited the plaintiff to "[two-hour] segments over an eight-hour day where speed was not critical"); *Ball v. Comm'r of Soc. Sec.*, No. 1:09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (finding that an ALJ's hypothetical question limiting a plaintiff to low stress jobs; simple, routine, repetitive tasks; and no fast-paced production requirements, "incorporated some but not all of the moderate limitations the ALJ found to exist"); *Renn v. Comm'r of Soc. Sec.*, No. 1:09-CV-319, 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010) (holding that an RFC limiting Plaintiff to simple, routine repetitive tasks; occasional interaction with public; and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and concentration).

In this case, the ALJ relied on the vocational expert's testimony regarding the second hypothetical question to conclude that Plaintiff could perform his past work as a dump-truck driver. The second hypothetical question mirrored the RFC the ALJ assigned in his written opinion. Within his RFC and this hypothetical question, the ALJ included limitations concerning Plaintiff's ability to read and write as well as a moderate reduction in concentration, persistence, and pace. The ALJ, however, did not include any additional mental limitations. The

13

ALJ's conclusions regarding Plaintiff's concentration, persistence, and pace appear to be based on Dr. Goldsmith's B criteria conclusions. (*See* R. at 192.)

In his decision, however, the ALJ apparently accepted different, and more detailed, mental limitations. For example**,** the ALJ's decision echoed Dr. Goldsmith opinions that "[Plaintiff] should be able to understand and remember simple 1-2 step tasks, but may have more difficulty with complex tasks. He was able to perform serial 3 tasks. His concentration and attention were adequate for simple and routine tasks." (*See* R. at 23, 180.) The decision also suggests that the ALJ agreed with a series of moderate restrictions Dr. Goldsmith assigned in his mental RFC assessment. (R. at 24, 178–79.) Furthermore, the ALJ's decision repeated various other mental-limitation opinions of Dr. Goldsmith. For instances, the ALJ made the following assessments:

> [Plaintiff] does report difficulty getting along with the general public, so he would likely do better in a work environment with limited public interaction. He would be able to relate to co-workers and supervisors on a very superficial level. His ability to adapt to workplace stressors is somewhat reduced, especially given physical symptoms. He should be able to adapt to a low stress work environment, without strict quotas.

(R. at 23–24.) The ALJ gave Dr. Goldsmith's opinions determinative weight and provided no indication that he disagreed with any aspect of Dr. Goldsmith's determinations. (R. at 25.)

Ultimately, the ALJ's RFC and second hypothetical question failed to account for the various mental limitations the ALJ accepted. The RFC and hypothetical question contain moderate restrictions to concentration, persistence, and pace. A number of the limitations the ALJ accepted, however, fall within different mental-ability categories such as understanding and memory, social interaction, and adaptation. (*See* R. at 178–79.) Because the RFC and hypothetical question upon which the ALJ relied do not accurately account for all of Plaintiff's

14

mental impairments, substantial evidence does not support the ALJ's determination that Plaintiff can perform his past relevant work.

**B.     Harmless Error**

To the extent Defendant maintains that the ALJ's error in this case was harmless, the undersigned disagrees.  As the Sixth Circuit has highlighted, the Court generally "reviews decisions of administrative agencies for harmless error." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009).  "Accordingly, if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.*  Furthermore, the Sixth Circuit has suggested that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (internal quotations omitted).

In this case, the ALJ's error was not harmless.  As the Sixth Circuit implied in *Ealy*, for the ALJ to rely on vocational expert testimony in his decision, he must fully inform the vocational expert of the relevant limitations.  *See* 594 F.3d at 516 ("[T]he [hypothetical] question must accurately portray a claimant's physical and mental impairments.").  Failure to accurately portray a claimant's impairments results in a lack of substantial evidence.  *Id.*  Here, the ALJ relied on vocational expert testimony to conclude that Plaintiff could perform his past relevant work, and, therefore, was not disabled.  Nevertheless, the hypothetical question and RFC upon which the vocational expert based his testimony did not accurately portray Plaintiff's accepted limitations.  These circumstances cast considerable doubt on the ALJ's ultimate conclusion

15

regarding Plaintiff's disability.

Defendant maintains that even crediting the various mental limitations omitted from the RFC and hypothetical question, it is still apparent that Plaintiff can perform his past relevant work. In making this assertion Defendant contends that Plaintiff's work-related testimony, as well as the definition of "unskilled work" within the regulations, indicate that Plaintiff could perform his past unskilled work as a dump-truck driver. *See* 20 C.F.R. § 404.1568 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). This contention, however, is highly speculative. As detailed above, Dr. Goldsmith found a number of mental limitations, influencing a variety of functional categories, that the ALJ accepted, but failed to include in his RFC or hypothetical question. Adding these limitations to those already present within the RFC results in an array of factors that the Commissioner must consider to determine whether Plaintiff can still perform his past relevant work. Considering these factors and the current record evidence, it is not readily apparent that Plaintiff could perform his past relevant work. Rather, the circumstances suggest that additional vocational evidence, or at the very least further explanation, is required for such a determination. Even noting the lenient definition of unskilled work, the undersigned cannot conclude that remand would be an idle and useless formality in this case.

Finally, the undersigned finds that remand, rather than an award of benefits, is appropriate. "The Court can reverse a decision of the Commissioner and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007). Here, as essential factual issues remain, the Court finds remand for further

consideration proper.

## VIII. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REMAND** this case for further consideration consistent with this Report and Recommendation.

## IX. NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: January 9, 2012          /s/ *Elizabeth A. Preston Deavers*
                               Elizabeth A. Preston Deavers
                               United States Magistrate Judge